UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA H.,[1] | Case No.: 23-cv-02087-GPC-MMP |
| Plaintiff, | **REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MERITS BRIEF** |
| v. | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | [ECF No. 16] |
| Defendant. | |

Plaintiff Maria H. ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act. [ECF No. 5.]

This matter comes before the Court for a Report and Recommendation ("R&R") on Plaintiff's Merits Brief. [ECF No. 16.] Defendant Commissioner filed a Responsive Brief, and Plaintiff filed a Reply Brief. [ECF Nos. 17, 18.] After a thorough review of the parties' submissions, the administrative record, and applicable law, the Court **RECOMMENDS** the District Judge **REVERSE** the Commissioner's denial and **REMAND** the matter for further proceedings consistent with this opinion.

---

[1] In accordance with Civil Local Rule 7.1(e)(6)(b), the Court refers to all non-government parties by using their first name and last initial.

1

# I. BACKGROUND

## A. Procedural History

Plaintiff first applied for disability insurance and supplemental security income benefits on January 17, 2018, claiming disability beginning July 15, 2017. Administrative Record ("AR") 69. These claims were denied on May 14, 2018, and upon reconsideration on September 6, 2018. *See* AR 69–80, 105. The Administrative Law Judge ("ALJ") held a telephonic hearing on these claims on August 6, 2020, and issued an unfavorable decision on August 21, 2020. AR 69–80, 105. Plaintiff appealed the ALJ's decision to this Court in case no. 20-cv-2532-RBB. AR 96.

While the January 2018 case's appeal was pending, Plaintiff filed additional applications for disability insurance and supplemental security income benefits on September 24, 2021. AR 172, 263–66, 267–72. Plaintiff's alleged impairments include: "Severe depression, Anxiety, PTSD; Diabetes; High blood pressure; Fibromyalgia; Arthritis back, neck, knees, ankles, hips; Tendinitis and carpal tunnel bilateral hands; [and] Chronic pain in [her] whole body." AR 102. The alleged date of onset was July 17, 2017—two days after Plaintiff's first claim.[2] AR 102. The claims were denied by initial determination on December 16, 2021, and upon reconsideration on September 6, 2022. AR 101–28, 129–68, 204. Plaintiff requested a hearing and received a telephonic hearing on April 21, 2023. AR 172, 230. During the hearing, Plaintiff amended the alleged onset date to September 1, 2020. AR 26, 173. The ALJ issued an unfavorable decision on June 23, 2023. AR 183.

Plaintiff requested Appeals Council review, which was denied on September 11, 2023. AR 1, 6–16. The ALJ's decision then became the final decision of the Commissioner of Social Security.

---

[2] The ALJ determined Plaintiff rebutted the presumption of continuing nondisability under SSAR 97-4(9) because the second application alleged impairments not previously considered. AR 173; *see also Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988).

### B.    General Background

Plaintiff was a fifty-five-year-old woman at the original alleged date of onset (July 17, 2017). AR 101. Her most recent employment was as a caregiver eight (8) hours per week, and before that she did semi-skilled clerical work at a hospital and motel. AR 18. Her highest level of education is a general associate's degree. AR 17.

## II.    SUMMARY OF THE ALJ'S FINDINGS

### A.    The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i) and (b); *see also* 20 C.F.R. § 416.920(a)(4)(i) and (b).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities and which has lasted or is expected to last for a continuous period of at least twelve months; if not, the claimant is not disabled, and the claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 404.1509 (setting forth the twelve-month duration requirement); *see also* 20 C.F.R. §§ 416.920(a)(4)(ii) and (c), 416.909.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed, and benefits are awarded. 20 C.F.R. § 404.1520(a)(4)(iii) and (d); *see also* 20 C.F.R. § 416.920(a)(4)(iii) and (d).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation

process. 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform her past work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled, and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(iv) and (f)–(g); *see also* § 416.920(a)(4)(iv) and (f)–(g).

The RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It reflects the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8p, 1996 WL 374184, at *1 ("RFC is not the least an individual can do despite his or her limitations or restrictions, but the most."). An RFC assessment must include an individual's functional limitations or restrictions as a result of all her impairments—even those that are not severe—and must assess her "work-related abilities on a function-by-function basis." SSR 96-8p, 1996 WL 374184, at *1*; see* 20 C.F.R. §§ 404.1545(a)(1)–(2) and (e), 416.945(a)(1)–(2) and (e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective.") An RFC determination must be based on "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1)–(3), 416.945(a)(1)–(3). A court must uphold an ALJ's RFC assessment when "the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). An ALJ errs when he provides an incomplete RFC that ignores or discounts "significant and probative evidence in the record favorable to [the claimant's] position." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step five, the burden then shifts to the ALJ to establish the claimant is not disabled because there is other work existing in "significant numbers in the national economy" the claimant can do, considering the claimant's RFC, age, education, and work experience. 20

C.F.R. §§ 404.1560(c), 416.960(c); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1). The ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all the claimant's physical and mental limitations supported by the record or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. *Id.* The determination of this issue comprises "the fifth and last step" in the sequential analysis. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### B.     The ALJ's Application of the Five-Step Process

#### 1.     Step One

At step one, the ALJ found Plaintiff had "not engaged in substantial gainful activity since September 1, 2020, the amended alleged onset date." AR 175.

#### 2.     Step Two

At step two, the ALJ found Plaintiff had the following severe impairments: "degenerative disc disease of the cervical and lumbar spine; chronic pain; degenerative inflammatory arthritis; fibromyalgia; diabetes mellitus; hypertension; and depression." AR 176. The ALJ found Plaintiff's asthma and obesity to be nonsevere impairments. *Id.*

Additionally, the ALJ found Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation to [Plaintiff's] ability to perform basic mental work activities." *Id.* Though the ALJ noted Plaintiff's complaints of "depressed mood, poor concentration, loss of interest in activities, and low energy" and prescription for duloxetine, the ALJ reasoned there was "minimal objective evidence of [Plaintiff] seeing a psychiatrist consistently or being hospitalized for psychiatric treatment[,]" and Plaintiff's treatment notes showed "unremarkable mental status examinations" with "mildly anxious mood and affect and only slight deficit in memory testing." *Id.* The ALJ concluded Plaintiff did not have a severe mental impairment. *Id.*

In making this finding, the ALJ considered the broad functional areas of mental functioning, also known as "Paragraph B" criteria. AR 176–77. Based on memory testing, the ALJ found mild limitation in the first functional area of "understanding, remembering,

or applying information." AR 177. Based on Plaintiff's self-reported isolation and "mildly anxious mood and affect," the ALJ found mild limitation in the second functional area of "interacting with others." *Id.* The ALJ also found mild limitation in the third functional area of "concentrating, persisting, or maintaining pace" based on Plaintiff's inability to execute serial threes and sevens. *Id.* And finally, the ALJ found mild limitation in the fourth functional area of "adapting or managing oneself" based on Plaintiff's mildly anxious mood and affect, though he noted Plaintiff was "well groomed, made fair eye contact, and [was] casually dressed at the psychiatric consultative evaluation." *Id.* Because Plaintiff's mental impairment only caused "no more than mild limitation" in any functional area and "the evidence [did] not otherwise indicate that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities," the ALJ found Plaintiff's mental impairment to be nonsevere. *Id.* The ALJ explained this finding comported with Plaintiff's unremarkable mental status examinations, as well as the opinions of two state agency psychological consultants, one of which opined there was insufficient evidence for a medical disposition and the other of which opined Plaintiff's mental impairment was nonsevere. AR 177–78.

Notably, the ALJ found psychiatric consultative examiner Dr. Etchie's opinion persuasive. AR 177. Dr. Etchie opined Plaintiff's ability to "perform simple and repetitive tasks"; to perform "detailed and complex tasks"; to perform "work-related tasks and activities on a consistent basis without special or additional supervision"; to "accept instructions from supervisors, interact with coworkers, and deal with the public"; and to "deal with the usual stresses, changes, and demands of gainful employment" were all mildly limited. *Id.* The ALJ reasoned Dr. Etchie's examination "showed no deficits in [Plaintiff's] thought process, thought content, speech, abstract thinking, orientation, insight and judgment, and fund of knowledge" and was "consistent with [Plaintiff's] normal activities of daily living." AR 177–78.

The ALJ acknowledged "[t]he limitations identified in the '[P]aragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental

impairments at steps 2 and 3 of the sequential evaluation process." AR 177. The ALJ noted the mental residual functional capacity assessment at steps 4 and 5 required "a more detailed assessment," though his "residual functional capacity assessment reflect[ed] the degree of limitation [he] found in the '[P]aragraph B' mental function analysis." *Id.*

### 3.    Step Three

At step three, the ALJ found Plaintiff's impairments did "not meet or medically equal the severity requirements of any listed impairment" in 20 CFR Part 404, Subpart P, Appendix 1. AR 178 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). In particular, the ALJ assessed Plaintiff's fibromyalgia diagnosis through the framework of the 1990 ACR Criteria for the Classification of Fibromyalgia, as well as the 2010 ACR Preliminary Diagnostic Criteria. AR 179. The ALJ concluded there was "insufficient evidence to support a finding that [Plaintiff's] fibromyalgia, by itself or in combination with other impairments, was medically equivalent to a listed impairment." *Id.* (citing SSR 12-2p).

### 4.    RFC Determination

The ALJ determined Plaintiff had the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b), specifically as to the following:

> can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for 6 hours out of an 8-hour workday with regular breaks; can sit for 6 hours out of an 8-hour workday with regular breaks; is unlimited with respect to pushing and/or pulling, other than as indicated for lifting and/or carrying; and can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl.

AR 179.

In determining Plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p," as well as "medical opinion(s) and prior administrative medical

finding(s)." *Id.* The ALJ specifically noted Plaintiff's complaints included "back, hand, and hip pain [and] numbness in the legs, brain fog, and decreased concentration." AR 180. The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but her "statements concerning the intensity, persistence and limiting effects" of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." *Id.*

The ALJ analyzed the medical evidence of record regarding Plaintiff's cervical and lumbar spine; chronic pain, fibromyalgia, and degenerative and inflammatory arthritis; and diabetes mellitus and hypertension. AR 180–81. The ALJ found the medical opinions of Dr. Christian and Dr. Balough regarding Plaintiff's physical impairments persuasive, while finding the medical opinions of Dr. Keller and Dr. Tan (Plaintiff's primary care physician, whose opinion was set forth in a Physical Residual Functional Capacity Questionnaire) unpersuasive. AR 181. The ALJ also considered the medical opinion of Dr. Kookootsedes, which the ALJ found "neither valuable nor persuasive." AR 182. Dr. Kookootsedes "opined that [Plaintiff] [had] a physical or mental incapacity that prevents or substantially reduces her ability to perform full-time work." *Id.*

Finally, the ALJ considered Plaintiff's daughter's Third Party Function Report, noting "[a]lthough [Plaintiff] alleged she suffers from back, hand, and hip pain, numbness in the legs, brain fog, and decreased concentration, [her] daughter states [she] is able to [sic] robust activities, such as watching her grandchildren (ages 8 and 12), prepare her own simple meals, drive a car, go out alone, pay bills, handle a savings account, and shop in stores." *Id.* The ALJ found the daughter's representations on the Third Party Function Report to be "less than fully consistent with the evidence of record as a whole." *Id.*

The ALJ only referenced Plaintiff's mental limitations in a summary paragraph, stating he considered "all symptoms," "medical opinion(s)[,] and prior administrative medical finding(s)" in making his findings. AR 179. The ALJ did not otherwise address Plaintiff's mental limitations during the RFC stage.

### 5. Step Four

At step four, the ALJ found Plaintiff capable of performing past relevant work as "a registration clerk and motel front office" because the work "does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity (20 CFR 404.1565 and 416.965)." AR 182. The ALJ determined Plaintiff performed that work "within the relevant period, for a sufficient length of time to learn it and provide average performance, and at the level of substantial gainful activity." *Id.* In concluding that Plaintiff was capable of performing past relevant work as generally performed, the ALJ "compar[ed] [Plaintiff's] residual functional capacity with the physical and mental demands of [her] past relevant work." *Id.* The ALJ accepted the testimony of the vocational expert as consistent with the Dictionary of Occupational Titles.  *Id.*

### 6. Step Five

At step five, the ALJ found Plaintiff "has not been under a disability, as defined in the Social Security Act, from September 1, 2020, through the date of this decision" pursuant to 20 CFR §§ 404.1520(f) and 416.920(f). *Id.*  The date of the ALJ's decision was June 23, 2023. AR 183.

## III.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if "it is either not supported by substantial evidence or is based upon legal error." *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022) (quoting *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018)).

The substantial-evidence standard requires a reviewing court to "look to the existing administrative record and ask whether it contains sufficient evidence to support the agency's factual determinations." *Id.* (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)) (internal quotation marks omitted). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

standard requires "more than a mere scintilla, but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). "Overall, the standard of review is highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023) (quoting *Rounds v. Comm'r*, 807 F.3d 996, 1002 (9th Cir. 2015), as amended). Thus, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Woods*, 32 F.4th at 788 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

A reviewing court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). The ALJ is responsible for resolving conflicts in medical testimony as well as any ambiguities in the record. *Id*. The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id*. at 1010; *see also Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024) ("[C]ourts can consider only the reasons the ALJ asserts.") (internal citation and quotation marks omitted).

A court may also reverse the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec*., 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the ALJ committed legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id*. at 932 (internal quotation marks omitted) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).

## IV.    THE PARTIES' ARGUMENTS

Plaintiff raises a single issue on appeal: Whether the Commissioner erred as a matter of law by failing to properly account for Plaintiff's mental limitations in the RFC analysis. [ECF No. 16 at 7.]

### A.    Plaintiff's Challenge to the RFC Determination

Plaintiff argues the ALJ found Plaintiff had mild mental limitations at step two but then erroneously failed to account for these limitations or "any mental limitations whatsoever" in the RFC, nor did he "incorporate any of Plaintiff's mental limitations into the questions posed to the vocational expert." [ECF No. 16 at 5–6.] In support of Plaintiff's argument, Plaintiff cites *Patricia C. v. Saul*, No. 19-cv-00636, 2020 WL 4596757 (S.D. Cal. Aug. 11, 2020) and *Gates v. Berryhill*, No. ED CV 16-00049, 2017 WL 2174401 (C.D. Cal. May 16, 2017) for the propositions that failure to analyze Plaintiff's mental health limitations in the RFC is error and the Court cannot infer (in the absence of written analysis) the ALJ considered Plaintiff's mental limitations and simply concluded they did not cause any significant limitation necessitating inclusion in the RFC. [ECF No. 16 at 9–10.] According to Plaintiff, this presents two alternative paths to error: (1) failing to account for Plaintiff's mental limitations in the RFC analysis and (2) failing to explain why Plaintiff's mental limitations are not set forth in the RFC. [*Id.* at 11–12.]

Plaintiff argues these errors are not harmless pursuant to *Patricia v. Saul* and *Gates v. Berryhill*. [*Id.* at 12.] Plaintiff references the Program Operations Manual System (POMS) listing the mental abilities needed for unskilled work and compares them to the Consultative Examiner's findings to argue prejudice. [*Id.*] POMS DI 25020.010(B)(3)(h) states "the ability to make simple work-related decisions is 'critical' for the performance of unskilled work," and Plaintiff argues she has limitations in handling even simple tasks. [*Id.*] Plaintiff claims limitations in social interactions, correlating to POMS 25020.010(B)(3)(g), which states "the ability to work in coordination with or in proximity to others without being distracted by them is 'critical' for the performance of unskilled work." [*Id.*] Plaintiff also claims her mild social limitations may preclude work due to

interactions with supervisors, and POMS 25020.010(B)(3)(h) says "the ability to accept instructions and respond appropriately to criticism from supervisors is 'critical' for the performance of unskilled work." [*Id.* at 12–13.] Plaintiff argues her mild limitation in adapting and managing corresponds to POMS 25020.010(B)(3)(m), which states "the ability to respond to changes in a routine work setting is 'critical' for the performance of unskilled work." [*Id.* at 13.] Additionally, Plaintiff claims the ALJ's failure to pose Plaintiff's mental limitations in his hypotheticals to the vocational expert was reversible error since the ALJ's depiction of Plaintiff's disability must be "accurate" and "detailed" per *Tackett v. Apfel*, 180 F.3d at 1101 (9th Cir. 1999). [ECF No. 16 at 13–14.]

Finally, Plaintiff argues the error is not harmless because the ALJ found Plaintiff capable of performing SVP Level 4 semiskilled jobs, but the POMS has recognized "an increasing requirement for understanding and memory and for concentration and persistence, e.g. [sic]: the ability to: understand and remember detailed instructions, carry out detailed instructions, and set realistic goals or make plans independently of others." [ECF No. 16 at 14–15 (quoting POMS DI 25020.010(B)(4)(b)).]

## B.     The Commissioner's Response

In response, the Commissioner argues the ALJ did not need to explicitly address Plaintiff's mild mental limitations ("Paragraph B criteria") in the RFC that the ALJ identified in steps two and three. [ECF No. 17 at 4.] Citing *Jandrejack v. Saul*, 843 Fed. App'x 993, 994 (9th Cir. 2021), *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022), *Bray v. Astrue*, 554 F.3d 1219, 1228–29 (9th Cir. 2009), and *Hoopai v. Astrue*, 499 F.3d 1071, 1076–77 (9th Cir. 2007), the Commissioner argues the Ninth Circuit held nonsevere mental impairments considered in the second and third step need not be addressed in the RFC. [*Id.* at 4–5.]

The Commissioner claims to the extent the ALJ needed to justify why the RFC did not include Plaintiff's mental limitations, two comments from the ALJ's decision suffice. [ECF No. 17 at 6.] First, the ALJ stated in step two "[t]he following residual functional capacity assessment reflects the degree of limitation [the ALJ] found in the '[P]aragraph

B' mental function analysis." [*Id.* at 6 (citing AR 177).] Second, the ALJ found in his RFC determination that "the evidence as a whole supports the residual functional capacity assessed in this decision . . . the residual functional capacity determined in this decision considers the claimant's subjective complaints while finding the maximum limitations based on the clinical and objective evidence." [*Id.* at 6 (citing AR 182)].

Additionally, the Commissioner argues although the ALJ found Dr. Etchie's opinion persuasive, the ALJ also found the opinion of state agency psychological consultant Dr. Carl VanderPlate, who determined Plaintiff had a nonsevere mental impairment, to be persuasive. [*Id.* at 7.] "The ALJ reasonably relied on Dr. VanderPlate's findings, who in determining Dr. Etchie's opinion persuasive reasonably translated those mild limitations into no functional restrictions." [*Id.* at 8.] Thus, the ALJ's determination that mild mental limitations did not warrant any functional limitations "was supported by substantial evidence and no additional explanation by the ALJ was required." [*Id.*]

Finally, in response to Plaintiff's argument the ALJ failed to pose questions to the vocational expert about mental limitations, the Commissioner claims the ALJ need only question the vocational expert about limitations supported by substantial evidence. [ECF No. 17 at 8.] The Commissioner cites *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001), for the proposition it is not error for an ALJ to fail to include a mild mental impairment in his hypotheticals to the vocational expert. [*Id.*] Because the ALJ here determined Plaintiff's mild mental limitations "did not require additional limitations in the RFC," the ALJ "did not need to include Plaintiff's mental limitations in the hypothetical questions posed to the vocational expert." [*Id.*]

### C.    Plaintiff's Reply

In reply, Plaintiff contends the Commissioner's reliance on *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022), is misplaced because, in contrast to the claimant in *Woods*, "Plaintiff identified facts and evidence that the ALJ relied upon to find that the Plaintiff was mildly limited in the Paragraph B criteria." [ECF No. 18 at 2.] Specifically, the ALJ

23-cv-02087-GPC-MMP

found Dr. Etchie's opinion as to Plaintiff's Paragraph B limitations persuasive, but then did not account for the Paragraph B criteria in the RFC.

Additionally, Plaintiff argues the ALJ noted the Paragraph B analysis at step two was not an RFC assessment, and the ALJ promised to address Plaintiff's mental limitations as part of the RFC but did not (and did not provide an explanation for his failure to do so). [ECF No. 18 at 4.]

Finally, Plaintiff contests the Commissioner's argument the ALJ "did not adopt [Dr. Etchie's] assessed limitations in finding [him] persuasive." [*Id.*] Plaintiff argues the ALJ found the opinion "fully persuasive – as opposed to partially persuasive or un-persuasive." [*Id.*] Thus, the Commissioner cannot argue "[t]he ALJ found the opinion persuasive" only to the extent that "it was consistent with Plaintiff's normal activities of daily living and well supported by Dr. Etchie's examination findings, which showed no deficits in thought process, thought content, speech, abstract thinking, orientation, insight and judgment, and fund of knowledge." [*Id.* (quoting ECF No. 17).]

## V.    ANALYSIS

### A.    The RFC Analysis

While not binding, Plaintiff's cited cases of *Patricia C. v. Saul*, No. 19-cv-00636, 2020 WL 4596757 (S.D. Cal. Aug. 11, 2020) and *Gates v. Berryhill*, No. ED CV 16-00049, 2017 WL 2174401 (C.D. Cal. May 16, 2017), bear a striking resemblance to this case. In *Patricia C.*, the ALJ determined at step two the claimant's medically determinable impairments of depression and anxiety were nonsevere and rated the claimant based on the Paragraph B criteria, finding "mild impairment" in each of the four areas. 2020 WL 4596757, at *7-8. Yet when the ALJ reached the RFC determination stage, he did not include the claimant's mental health limitations in his analysis. *Id.* at *13. The Commissioner in *Patricia C.*, like the Commissioner here, argued "the ALJ did not err in his RFC assessment because Plaintiff's depression and anxiety 'had only mild limitations on her functioning.'" *Id.* at *12. The *Patricia C.* Court was unpersuaded by the Commissioner's argument, citing to 20 C.F.R. § 416.945(a)(2) for the proposition at the

RFC stage, the ALJ must consider limitations and restrictions imposed by all an individual's impairments, including nonsevere impairments. *Id.* Indeed, 20 C.F.R. § 416.945(a)(2) states in determining RFC, "[w]e will consider all of your medically determinable impairments of which we are aware, *including your medically determinable impairments that are not 'severe.'*" (emphasis added). The *Patricia C.* Court cited nine cases in which "Ninth Circuit courts have found reversible error where the ALJ failed to at least consider mild mental limitations when assessing the claimant's RFC." 2020 WL 4596757, at *12. Likewise, in *Gates*, the ALJ found the claimant had mild mental impairments but did not include those limitations in the RFC and the hypothetical to the vocational expert, resulting in reversal and remand. 2017 WL 2174401 at *2.

The Court also finds *Hutton v. Astrue*, 491 Fed. App'x 850 (9th Cir. 2012) instructive. In *Hutton*, the Ninth Circuit found error when an ALJ determined at step two the claimant suffered from mild mental limitation but then failed to factor this mental limitation into his RFC analysis. *Id.* at 850. Citing 20 C.F.R. § 416.945(a)(2), the Ninth Circuit found the ALJ was required to consider the claimant's mild limitations at the RFC stage; the ALJ had "no reason . . . to disregard his own finding that Hutton's nonsevere PTSD caused some 'mild' limitations in the areas of concentration, persistence, and pace." *Id.* at 851.

Here, the Commissioner argues the ALJ did not need to explicitly address Plaintiff's mild mental limitations in the RFC, and the ALJ's determination the mild mental limitations did not warrant any functional limitations "was supported by substantial evidence and no additional explanation by the ALJ was required." [ECF No. 17 at 8.] As discussed in *Patricia C.*, these arguments are squarely rebutted by the plain language of 20 C.F.R. § 416.945(a)(2).

Additionally, the Commissioner argues even if the ALJ was required to address Plaintiff's mental limitations in the RFC, the ALJ did so with the following comments: (1) the "following residual functional capacity assessment reflects the degree of limitation [the ALJ] found in the '[P]aragraph B' mental function analysis," and (2) "the evidence as a

whole supports the residual functional capacity assessed in this decision . . . the residual functional capacity determined in this decision considers the claimant's subjective complaints while finding the maximum limitations based on the clinical and objective evidence." [ECF No. 17 at 6 (quoting AR 177, 182).] But this argument was also made and rejected in *Patricia C.* In *Patricia C.,* the ALJ acknowledged at step two the claimant had mild mental limitations in all four functional areas. 2020 WL 4596757 at \*8. The *Patricia C.* ALJ[3] then used the same boilerplate language in his step two analysis now before this Court: "[T]he following residual functional capacity assessment reflects the degree of limitation [the ALJ has] found in the '[P]aragraph B' mental function analysis." 2020 WL 4596757 at \*13. The *Patricia C.* Court rejected this boilerplate approach, stating it "will not infer in a vacuum that the ALJ considered Plaintiff's mild mental limitations but then validly concluded that they did not cause any significant limitation necessitating inclusion in the RFC." *Id.* Likewise, this Court cannot infer, in the absence of articulated reasoning, the ALJ made a reasoned decision not to include Plaintiff's mental limitations in his RFC analysis. This is particularly true in this case, where the ALJ acknowledged at step two "[t]he limitations identified in the '[P]aragraph B' criteria *are not a residual functional capacity assessment*," and "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process *requires a more detailed assessment*." AR 177 (emphasis added); *see also Patricia C.*, 2020 WL 4596757, at \*13. Here, the ALJ did not provide a "more detailed assessment" at steps four and five.

The Commissioner relies primarily on *Hoopai v. Astrue*, 499 F.3d 1071, 1076–77 (9th Cir. 2007), *Jandrejack v. Saul*, 843 Fed. App'x 993, 994 (9th Cir. 2021) and *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022), but the Court does not find these cited cases to be persuasive. *Hoopai* addressed a different issue; it focused on arguments regarding mental limitations and the questioning of vocational experts where the claimant disputed the ALJ's

---

[3] The ALJ in *Patricia C.* and the ALJ in the case at bar is, in fact, the same ALJ.

step five determination. 449 F.3d at 1074, 1075–76. Specifically, the claimant argued a finding of severe depression at step two necessarily carries through to step five. *Id.* at 1076. The issue before this Court is not a step five question; it is an RFC question. The *Jandrejack* opinion contains very limited factual context, but notably the ALJ determined the medical opinions finding mental limitations were unsupported by the claimant's medical record. 843 Fed. App'x at 994. In contrast, the ALJ in this case specifically found Dr. Etchie's opinion regarding Plaintiff's mental limitations persuasive.

In *Woods*, the ALJ found the claimant had "mild limitation[s]" in two of the Paragraph B criteria. 32 F.4th at 794. The Court stated "[t]he ALJ's assessment of [the claimant's] residual functional capacity *expressly reflected these limitations*," something which the ALJ did not do in Plaintiff's RFC assessment. *See id.* (emphasis added). Even assuming the *Woods* Court's assessment of the "express" language of the RFC was inaccurate, the Court went on to fault Woods for failing to "identify any particular evidence that the ALJ failed to consider or explain why the record [did] not support the ALJ's findings regarding her mental functioning." *Id.* Here, Plaintiff has clearly identified the particular evidence the ALJ did not consider in assessing the RFC—her mental limitations. She has also identified why the record does not support the ALJ's failure to consider her mental limitations—the ALJ himself found the medical opinion underlying her mental limitations to be persuasive, and yet he did not consider them at the RFC stage.

Accordingly, the Court finds the ALJ did not properly show how the mild mental limitations were considered in the RFC determination.

## B.    The ALJ's Questions to the Vocational Expert

Although inadequately briefed, Plaintiff also argues the ALJ was required to include her mental limitations in the questioning of the vocational expert. The Commissioner disputes such a requirement exists. Specifically, the ALJ posed the following three hypotheticals to the vocational expert:

> So let's assume we have somebody with the claimant's age, education, past work, Dr. Jesko. And for purposes of our first

hypothetical, who can lift or carry 20 pounds occasionally, 10 pounds frequently. Who could stand in or walk for six hours in an eight-hour workday. Who could sit for six hours in an eight-hour workday. Pushing and/or pulling operation of hand or foot controls is comparable to the amount of weight for lifting. Under carrying, we have postural limitations. All of the postural are occasional, so we can occasionally climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, occasionally balance, occasionally stoop, occasionally kneel, occasionally crouch, occasionally crawl. In addition to that – well, that's it for this hypothetical. Can work be performed?

. . .

Let me change the hypothetical to the same age, education, past work, but now we're going to have some additional limits of we could sit for one hour at a time. Who could stand for 30 minutes at a time. Let me say that for total standing and/or walking is less than two hours and total sitting is four hours. So we're looking at less than a six-hour workday. We need to alternate positions at will. We're going to take unscheduled rest breaks every 45 minutes, lasting up to 10 minutes, lifting and/or carrying 10 pounds, occasionally less than that. Frequently we cannot stoop, bend, crouch, climb, twist in terms of using the hands for gross and fine manipulation and reaching bilaterally, we're looking at only 10 percent of the workday capability. We're going to miss four days – more than four days a month because of the combined impairments. Is that work preclusive?

. . .

Who could lift and/or carry four pounds occasionally, less than that frequently with either hand grasping, fingering, feeling is rarely bilaterally. Who could sit for one hour at a time. The total sit/stand walk is less than two hours each, so we're looking at less than a six-hour workday. Who has the need for excess rest breaks. I factored that into a less than a [sic] six-hour workday. *Who is not able to understand and remember, carry out, apply even simple tasks or simple job instructions. Who cannot interact appropriately with others.* Those factors alone, does that preclude work?

AR 30–31 (emphasis added).

Hypothetical questions to a vocational expert must "set out all the limitations and restrictions of a particular claimant." *Bray*, 554 F.3d at 1228 (internal citation omitted). If the questions fail to do so, the "the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id.* (internal citation omitted).

Here, the Commissioner relies on *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001) to argue mental impairments need not be included in the hypotheticals posed to the vocational expert if the "ALJ finds a mild mental impairment is adequately addressed in an RFC that omits mental limitations." [ECF 17 at 8.]. The Court disagrees with that interpretation of the *Osenbrock* decision. The *Osenbrock* Court found the ALJ's failure to include the claimant's depression in his questioning of the vocational expert was not error because ALJs may limit hypotheticals to "impairments that are supported by substantial evidence in the record." 240 F.3d at 1165 (internal citation omitted). The Court gave significant deference to the claimant's treating physician, who opined the claimant's depression was a mild impairment which presented "no significant interference with [the claimant's] ability to perform basic work-related activities." *Id.*

In contrast to the claimant in *Osenbrock*, Plaintiff's ability to perform simple and repetitive tasks, to perform detailed and complex tasks, to perform work-related tasks without special or additional supervision, to accept instructions from supervisors, to interact with coworkers, to deal with the public, and to handle the demands of gainful employment are all mildly limited per Dr. Etchie's opinion. AR 177. The ALJ found that Dr. Etchie's opinion to be persuasive. *Id.*

Though the Commissioner does not specifically cite *Bray* in connection with this vocational expert issue, the Court finds it instructive. 554 F.3d at 1228–29. In *Bray*, the claimant argued the ALJ did not adequately account for her adjustment disorder when he asked the vocational expert to "assume that Bray 'could carry out, attend [sic], and concentrate on all but the most detailed and complex tasks.'" *Id.* The claimant argued

because her mental impairments were "severe," she necessarily could not perform basic work activities, so the question was inaccurate. *Id.* The Ninth Circuit disagreed, finding no error because the medical record included a psychiatrist's opinion the claimant could "accept instructions from supervisors and interact with coworkers and the public . . . perform work activities on a consistent basis without special or additional supervision . . . [and] complete a normal workday/workweek without interruptions from her psychiatric condition." *Id.* The Ninth Circuit reasoned this psychiatrist's opinion supported the ALJ's conclusion the claimant's mental impairments prevented her from completing "only the most complex tasks." *Id.* at 1229.

The *Bray* claimant's argument was a matter of degree—essentially, whether the ALJ minimized her mental limitations in his hypothetical to the vocational expert. In contrast, Plaintiff here argues the ALJ's questioning of the vocational expert was inadequate because it did not account for all of her mental limitations, despite the ALJ having a persuasive medical opinion finding Plaintiff's ability to perform simple and complex tasks without special or additional supervision, to interact with coworkers and the public, and to deal with the demands of gainful employment were all mildly limited. The ALJ's third hypothetical was the only hypothetical referencing any of Plaintiff's mental limitations. AR 30–31. It only addressed Plaintiff's ability to "understand and remember, carry out, apply even simple tasks or simple job instructions" and her inability to "interact appropriately with others." AR 31. Thus, where the ALJ found the doctor's opinion on mild mental limitations to be persuasive, he erred in his limited questioning of the vocational expert related to those mental limitations.

### C.    Harmless Error Analysis

The Court may not reverse an ALJ's decision if the ALJ's legal error is harmless. *Garcia*, 768 F.3d at 932 (internal citation omitted). But it is not "clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id*. at 932. The Court cannot simply assume what Plaintiff's disability determination might have been had the ALJ considered Plaintiff's mental limitations at the RFC stage, nor can it

23-cv-02087-GPC-MMP

guess how the vocational expert would have testified if the ALJ had included *all* of Plaintiff's mental limitations in his questions. *See Gates*, 2017 WL 2174401, at *3 (citing *Allen v. Sullivan*, 880 F.2d 1200, 1200–01 (11th Cir. 1989)). Accordingly, remand is required to remedy the defects in the ALJ's decision.

## VI.   CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Gonzalo P. Curiel under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(a) of the United States District Court for the Southern District of California. For the reasons set forth above, **IT IS HEREBY RECOMMENDED** the District Judge issue an Order: (1) approving and adopting this R&R, and (2) reversing the Commissioner's decision, and (3) remanding the matter for further administrative proceedings consistent with this opinion.

**IT IS HEREBY ORDERED** any party to this action may file written objections with the Court and serve a copy on all parties no later than fourteen (14) days from the date of this Report and Recommendation. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than fourteen (14) days after being served with a copy of the Objections.

**IT IS SO ORDERED**.

Dated:  January 24, 2025

HON. MICHELLE M. PETTIT
United States Magistrate Judge

23-cv-02087-GPC-MMP